RB:CSK:MMS
F.# 2010R01283

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

HECTOR LOPEZ,

           Defendant.

I N D I C T M E N T

CR 12 -            564
No.

(T. 18, U.S.C., §§ 371,
669, 981(a)(1)(C),
982(a)(1), 982(a)(7),
982(b), 982(b)(1), 1341,
1343, 1347, 1349,
1956(a)(1)(B)(i),
1956(h), 1957(b),
1957(d)(1), 2 and 3551
et seq.; T. 21,
U.S.C., § 853(p); T. 26,
U.S.C., § 7201; T.
28, U.S.C., §
2461(c); T. 29,
U.S.C., §§ 186(a)(2)
and 186(d)(2); T. 31,
U.S.C., §§ 5317(c),
5324(a)(3) and 5324(d)(1))

- - - - - - - - - - - - - -X

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

      At all times relevant to this Indictment, unless
otherwise indicated:

I.    <u>The Labor Union and Welfare Fund</u>

      1.  The Metal Polishers/Refinishers, Painters,
Production & Novelty Workers, Sign Pictorial & Display,
Automotive Equipment Painters Workers Union, Local 8A-28A, AFL-
CIO ("Local 8A-28A") was a labor organization for purposes of the
Labor Management Relations Act of 1947, as defined by Sections

142 and 152 of Title 29, United States Code, and an employee organization, as defined by Title I of the Employee Retirement Income Security Act of 1974 ("ERISA") and by Sections 1002 and 1003 of Title 29, United States Code.  Local 8A-28A was initially headquartered in New York, New York, but moved its headquarters to Long Island City, New York in approximately 2007.

2.  Local 8A-28A, on behalf of its members, entered into collective bargaining agreements with employers who employed members of Local 8A-28A.  These agreements obligated the employers to pay certain salaries and other employee benefits to their employees who were members of Local 8A-28A.  Officers of Local 8A-28A represented such employees and members by, among other things, negotiating collective bargaining agreements and ensuring that employers complied with their contractual obligations under those agreements, including the payment of contributions for union-sponsored health and welfare benefits.

3.  Members of Local 8A-28A were covered by the Metal Polishers-Metal Production Union Local 8A-28A Welfare Fund (the "Welfare Fund"), an employee welfare benefit plan, as defined by Sections 1002 and 1003 of Title 29, United States Code and subject to ERISA.  The Welfare Fund provided, among other benefits, the payment for healthcare services and items to employee and union member participants and their beneficiaries.

4.    The Welfare Fund was managed by a Board of Trustees consisting of Union Trustees and Employer Trustees (collectively, the "Board").  The Board had discretion over the assets held by the Welfare Fund and was responsible for the Welfare Fund's overall operation and administration.  Each trustee had a fiduciary duty under ERISA to manage the Welfare Fund's assets solely for the benefit of the participants and their beneficiaries, and to refrain from engaging in transactions prohibited by ERISA including receiving consideration for his or her own personal account from any party dealing with the Welfare Fund in connection with a transaction involving the assets of the Fund.

II.    The Defendant and His Co-Conspirators

5.    The defendant HECTOR LOPEZ was a Union Trustee of the Welfare Fund, Chairman of the Board and President of Local 8A-28A.

6.    John Doe #1, an individual whose identity is known to the Grand Jury, owned various companies, including Company A, Company C and Company D, and came to control Company B, the identities of which are each known to the Grand Jury.  Company A was a general contracting company; Company B was an electrical maintenance company; Company C was a maintenance company; and Company D was a shell corporation created by John Doe #1 to conduct financial transactions.  John Doe #1 served as President

of Company A, which held a collective bargaining agreement with Local 8A-28A. John Doe #1 was therefore an officer and agent of an employer whose employees were covered by the Welfare Fund. John Doe #1 was also an Employer Trustee of the Welfare Fund and thus a member of the Board.

7. John Doe #2, an individual whose identity is known to the Grand Jury, owned Company B and held the title of President. In or about 2006, John Doe #1 assumed control of Company B, which remained in John Doe #2's name, and John Doe #2 began working for Company A as a project manager.

8. John Doe #3, an individual whose identity is known to the Grand Jury, was the President of Company E, the identity of which is known to the Grand Jury. Company E was contractually retained by the Board to serve as the Third Party Administrator ("TPA") for the Welfare Fund. Company E was responsible for, among other things, paying and processing health insurance claims for union members participating in the Welfare Fund and their beneficiaries. Company E charged a monthly fee per member to administer the Welfare Fund.

III. The John Doe #3 Kickback/Money Laundering Scheme

9. In or about March 2003, John Doe #1, at the direction of the defendant HECTOR LOPEZ, approached John Doe #3 about a kickback scheme (the "John Doe #3 Kickback Scheme") in which John Doe #3 would pay LOPEZ and John Doe #1 in order to

ensure that Company E would remain the TPA of the Welfare Fund. John Doe #3 agreed to make the payments.

10.   Pursuant to the John Doe #3 Kickback Scheme, during each month in or about and between March 2003 and September 2010, John Doe #3 caused a check (the "Monthly Check") to be written from Company E to John Doe #1's shell corporation, Company D, and mailed to an apartment John Doe #1 owned in Staten Island, New York.   John Doe #1 typically deposited the Monthly Check into Company D's bank account and subsequently caused checks to be written from Company D to Company A, Company B, or Company F, the identity of which is known to the Grand Jury. These checks were thereafter cashed at a check casher in Brooklyn, New York, by John Doe #1 or someone who worked for him, such as John Doe #2.   John Doe #1 then used the cash to pay the defendant HECTOR LOPEZ his portion of the kickback and to pay employees of Company A off the books.   On at least one occasion, rather than give LOPEZ cash, John Doe #1, at the request of LOPEZ, caused a check from Company D to be written and paid to a company in which LOPEZ had an interest.   In or about and between March 2003 and September 2010, Company E paid approximately $740,000 in kickbacks into the Company D account.

IV.   The New Jersey Home Kickback Scheme

11.   In or about and between January 2007 and December
2010, John Doe #1 permitted the defendant HECTOR LOPEZ and his
family to live rent-free in a house (the "Oakland House") owned
by Company C that was located in Oakland, New Jersey (the "House
Kickback Scheme").  As part of the House Kickback Scheme, John
Doe #1 paid the real estate taxes on the Oakland House using
LOPEZ's portion of the proceeds of the John Doe #3 Kickback
Scheme.

V.   Union Hall Renovation Scheme

12.   In approximately March 2007, Company B entered
into a contract with the Welfare Fund to perform construction
work on the Union Hall.  The contract was purportedly signed by
the defendant HECTOR LOPEZ and John Doe #2, when in fact John Doe
#1 had signed John Doe #2's name to conceal from the Board that
employees of John Doe #1, an Employer Trustee, were performing
the Union Hall Renovation.

13.   From this time until the completion of the Union
Hall Renovation in 2010, Company A, rather than Company B,
actually performed the Union Hall Renovation.  During this time,
LOPEZ and others caused the submission of invoices to the Welfare
Fund ("the Fraudulent Invoices") which (a) falsely reflected that
Company B had performed the Union Hall Renovation, (b) charged
for work that had not been performed or for which the Welfare

Fund had already paid, and (c) charged significantly inflated prices for work that was performed (the "Union Hall Renovation Fraud"). LOPEZ instructed John Doe #1 as to the amount by which each Fraudulent Invoice should be inflated.

14. John Doe #2 typically emailed the Fraudulent Invoices from his office in Linden, New Jersey the ("Linden Office") to the Welfare Fund administrator in Queens and sometimes faxed them from the Linden Office or dropped them off at the Union Hall. A portion of money included in the Welfare Fund payments to Company B were kickbacks to the defendant HECTOR LOPEZ in exchange for allowing John Doe #1's company to perform the Union Hall Renovation. On a number of occasions, John Doe #2, at the direction of John Doe #1, provided LOPEZ with envelopes containing at least $1000 in cash.

VI.  The Bid-Rigging Scheme

15. In July 2007, in response to the Union Hall's need for a new sprinkler system, the defendant HECTOR LOPEZ, John Doe #1 and John Doe #2 carried out another scheme to defraud the Welfare Fund ("the Bid-Rigging Scheme"). As part of the scheme, at LOPEZ's request, John Doe #1 provided LOPEZ with three bids for the sprinkler system, including one from Company B. Two of these bids (the "Fake Bids"), purported to be from companies other than Company B, when, in fact, they were created by John Doe #2 on his computer. The Fake Bids quoted a higher price than

Company B's bid to complete the job.  With full knowledge that the Fake Bids were not created or submitted by the companies which had purportedly submitted them, LOPEZ presented the Fake Bids together with Company B's bid to the Board.  The Board awarded the job to Company B, the lowest bidder, after which John Doe #1 paid LOPEZ a kickback from the monies Company B receive for the sprinkler system job.

VII. The Structuring Scheme

16.  The statutes and regulations governing cash transactions with financial institutions provided that:

a.  Pursuant to Title 31, United States Code, Section 5313 and former Title 31, Code of Federal Regulations ("CFR"), Section 103.22, which was codified at Title 31, CFR Section 1010.311, effective March 1, 2011, domestic financial institutions were required to file a report with the United States Department of the Treasury for each deposit to such financial institution that involved a transaction in currency of more than $10,000 ("Currency Transaction Report" or "CTR").

b.  Pursuant to former Title 31, CFR, Section 103.22(c)(2), which was codified at Title 31, CFR, Section 1010.313, effective March 1, 2011, multiple currency transactions were treated as a single transaction if the financial institution had knowledge that they were by or on behalf of any person and resulted in either cash in or cash out totaling more than $10,000

during any one business day. Deposits made at night or over a weekend or holiday were treated as if received on the next business day following the deposit.

c. CTRs required disclosure of, among other things, the identity of the individual who conducted the transaction and the individual or organization for whom the transaction was completed.

d. CTRs were required to be filed to assist the United States in criminal, tax, and regulatory investigations and proceedings, as stated in former Title 31, CFR, Section 103.12, which was codified at Title 31, CFR, Section 1010.301, effective March 1, 2011.

e. Pursuant to former Title 31, CFR, Section 103.11(gg), which was codified at Title 31, CFR, 1010.100(xx), effective March 1, 2011, "structuring" financial transactions included the breaking down of amounts of currency into amounts of $10,000 or less prior to transacting business with domestic financial institutions, for the purpose of evading the currency reporting requirements of former Title 31, CFR, Section 103.22, which is currently codified at Title 31, CFR, 1010.311.

17. On each of the following seven consecutive business days, the defendant HECTOR LOPEZ caused the following sums of cash to be deposited into the account at Bank of America

in Queens, New York of Jane Doe #1, an individual whose identity
is known to the Grand Jury:

| DATE | DEPOSIT AMOUNT |
|------|----------------|
| August 16, 2010 | $9,000 |
| August 17, 2010 | $9,000 |
| August 18, 2010 | $9,000 |
| August 19, 2010 | $9,000 |
| August 20, 2010 | $9,000 |
| August 23, 2010 | $9,000 |
| August 24, 2010 | $6,000 |

18. On each of the following four consecutive business
days, the defendant HECTOR LOPEZ caused the following sums of
cash to be deposited into his own account at Chase Bank in
Queens, New York:

| DATE | DEPOSIT AMOUNT |
|------|----------------|
| July 6, 2010 | $6,000 |
| July 7, 2010 | $6,000 |
| July 8, 2010 | $6,000 |
| July 9, 2010 | $4,100 |

VIII.  The Tax Evasion Scheme

19. For each of the tax years 2006 through 2009, the
defendant HECTOR LOPEZ did knowingly and willfully attempt to
evade and defeat a significant portion of the federal income
taxes that he owed for that year, by swearing to the truthfulness
of and causing to be filed with the Internal Revenue Service

joint income tax returns ("Forms 1040") for himself and his wife for each of those years which he knew did not report as income the money and things of value that he received from John Doe #1 as part of the John Doe #3 Kickback Scheme, the Money Laundering Scheme, the House Kickback Scheme, the Union Hall Renovation Fraud and the Bid-Rigging Scheme (collectively, the "Unreported Income"), and by concealing the Unreported Income in the additional ways indicated in the foregoing paragraphs.

COUNT ONE
(Conspiracy to Commit Mail Fraud and Wire Fraud)

20.  The allegations contained in paragraphs 1 through 19 are realleged and incorporated as though fully set forth in this paragraph.

21.  In or about and between January 2007 and May 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HECTOR LOPEZ, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Welfare Fund, to wit, the John Doe #3 Kickback Scheme, the Union Hall Renovation Fraud and the Bid-Rigging Scheme, and to obtain money and property from the Welfare Fund by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to (a) cause mail matter to be delivered by the United States Postal Service, contrary to Title 18, United States Code, Section 1341 and (b) transmit and

cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT TWO
(Conspiracy to Make Unlawful Labor Payments, Embezzle From an Employee Benefit Plan and Solicit and Receive Kickbacks to Influence the Operation of an Employee Benefit Plan)

22. The allegations contained in paragraphs 1 through 19 are realleged and incorporated as if fully set forth in this paragraph.

23. In or about and between January 2007 and May 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HECTOR LOPEZ, being a trustee, officer and agent of an employee welfare benefit plan, to wit: a Union Trustee of the Welfare Fund and an officer and an employee of a labor organization, to wit: President of Local 8A-28A, which labor organization represented, sought to represent and would admit to membership employees of employers who were employed in an industry affecting interstate commerce, to wit: the construction industry, together with others, did knowingly and intentionally conspire to: (a) willfully request, demand, receive, accept and agree to receive and accept payments of money and other things of value, in excess of $1,000, to wit,

the proceeds of the John Doe #3 Kickback Scheme, the Union Hall

Renovation Fraud, the Bid-Rigging Scheme, and the House Kickback

Scheme, from an employer and person who acted in the interests of

an employer who employed members of Local 8A-28A, contrary to

Title 29, United States Code, Sections 186(b)(1) and 186(d)(2);

(b) embezzle, steal and unlawfully and willfully abstract and

convert to his own use and the use of others, the money, funds,

property and other assets of an employee welfare benefit plan

subject to Title I of ERISA, to wit, the money, funds, property

and assets taken from the Welfare Fund as a result of the John

Doe #3 Kickback Scheme, the Union Hall Renovation Fraud and the

Bid-Rigging Scheme, contrary to Title 18, United States Code,

Section 664; and (c) receive, agree to receive and solicit one or

more fees, kickbacks, commissions, gifts, money and things of

value, to wit: the proceeds of the John Doe #3 Kickback Scheme,

the Union Hall Renovation Fraud and the Bid-Rigging Scheme,

because of, and with intent to be influenced with respect to, his

actions, decisions and other duties relating to one or more

questions and matters concerning the Welfare Fund, to wit: the

continued retention of Company E as the TPA of the Welfare Fund

and permitting Company A, which was owned and controlled by John

Doe #1, to perform the Union Hall Renovation and to submit the

Fraudulent Invoices, contrary to Title 18, United States Code,

Section 1954.

24.   In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant HECTOR LOPEZ, together with others, committed and caused the commission of, among others, the following:

<u>OVERT ACTS</u>

a.   On or about May 30, 2007, Company B submitted an invoice in the amount of $127,550 to the Welfare Fund purportedly for renovation work done on the Union Hall.

b.   On or about August 22, 2007, LOPEZ presented bids for the Union Hall's sprinkler system to the Board.

c.   During 2008, LOPEZ lived in the Oakland House.

d.   On or about December 4, 2008, a $40,000 check from Company D was deposited into LOPEZ's bank account at Chase Bank in Queens, New York.

e.   On or about April 7, 2009, the Board voted to increase Company E's fee by $2.50 per member per month.

(Title 18, United States Code, Sections 371 and 3551 <u>et seq</u>.)

<u>COUNT THREE</u>
(Money Laundering Conspiracy)

25.   The allegations contained in paragraphs 1 through 19 are hereby realleged and incorporated as if fully set forth in this paragraph.

26.   In or about and between March 2003 and September 2010, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendant HECTOR

LOPEZ, together with others, did knowingly and intentionally

conspire to: (i) conduct financial transactions in and affecting

interstate commerce, to wit: causing checks from Company E to be

endorsed and deposited into Company D's bank account and

thereafter converting them into cash to pay LOPEZ and employees

of John Doe #1, which transactions in fact involved the proceeds

of specified unlawful activity, to wit: mail fraud, in violation

of Title 18, U.S.C., Section 1341, and the solicitation and

receipt of kickbacks to influence the operations of an employee

welfare benefit plan, in violation of Title 18, U.S.C., Section

1954, knowing that the property involved in the transactions

represented the proceeds of some form of unlawful activity, and

knowing that the transactions were designed in whole and in part

to conceal and disguise the nature, the location, the source, the

ownership and the control of the proceeds of the specified

unlawful activity, contrary to Title 18, United States Code,

Section 1956(a)(1)(B)(i); and (ii) engage in monetary

transactions, in and affecting interstate commerce, in criminally

derived property that was of a value greater than $10,000 and

that was derived from specified unlawful activity, to wit: mail

fraud, in violation of Title 18, U.S.C., Section 1341, and the

solicitation and receipt of kickbacks to influence the operations

of an employee welfare benefit plan, in violation

of Title 18, U.S.C., Section 1954, contrary to Title 18, United States Code, Section 1957.

(Title 18, United States Code, Sections 1956(h), 1956(a)(1)(B)(I), 1957(b), 1957(d)(1) and 3551 et seq.)

<u>COUNT FOUR</u>
(Mail Fraud)

27.   The allegations contained in paragraphs 1 through 19 are realleged and incorporated as though fully set forth in this paragraph.

28.   In or about and between March 2003 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HECTOR LOPEZ, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Welfare Fund, to wit, the John Doe #3 Kickback Scheme, and to obtain money and property from the Welfare Fund by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, and attempting to do so, did place, deposit and cause to be placed and deposited in a post office and authorized depository for mail, matter to be sent and delivered by the United States Postal Service.

(Title 18, United States Code, Sections 1341, 2 and 3551 et seq.)

## COUNT FIVE
### (Wire Fraud)

29.   The allegations contained in paragraphs 1 through 19 are realleged and incorporated as though fully set forth in this paragraph.

30.   In or about and between January 2007 and May 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HECTOR LOPEZ, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Welfare Fund, to wit, the Union Hall Renovation Fraud, and to obtain money and property from the Welfare Fund by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, and attempting to do so, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT SIX
### (Money Laundering)

31.   The allegations contained in paragraphs 1 through 19 are hereby realleged and incorporated as if fully set forth in this paragraph.

32. In or about and between March 2003 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HECTOR LOPEZ, together with others, did knowingly and intentionally conduct financial transactions in and affecting interstate commerce, to wit: causing checks from Company E to be endorsed and deposited into Company D's bank account and thereafter converting them into cash to pay LOPEZ and employees of John Doe #1, which transactions in fact involved the proceeds of specified unlawful activity, to wit: mail fraud, in violation of Title 18, U.S.C. § 1341, and the solicitation and receipt of kickbacks to influence the operations of an employee welfare benefit plan, in violation of Title 18, U.S.C., § 1954, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), 2 and 3551 et seq.)

## COUNT SEVEN
(Unlawful Payment to Union Official)

33. The allegations contained in paragraphs 1 through 19 are hereby realleged and incorporated as if fully set forth in this paragraph.

34. In or about and between March 2003 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HECTOR LOPEZ, the President of Local 8A-28A, a labor organization which represented, sought to represent and would have admitted to membership employees of Company A, who were employed in an industry affecting commerce, to wit: the construction industry, together with others, did knowingly and willfully request, demand, receive, accept and agree to receive and accept things of value in an amount in excess of $1000, to wit: the proceeds of the John Doe #3 Kickback Scheme, the Union Hall Renovation Fraud and the Bid-Rigging Scheme, from a person acting in the interest of an employer, to wit: Company A, which was a party to a collective bargaining agreement with Local 8A-28A.

(Title 29, United States Code, Sections 186(a)(2) and 186(d)(2); Title 18, United States Code, Sections 2 and 3551 <u>et seq</u>.)

## COUNT EIGHT
(Unlawful Payment to Union Official)

35. The allegations contained in paragraphs 1 through 19 are hereby realleged and incorporated as if fully set forth in this paragraph.

36. In or about and between January 2007 and December 2010, both dates being approximate and inclusive, within the District of New Jersey, the defendant HECTOR LOPEZ, the President

of Local 8A-28A, a labor organization which represented, sought to represent and would have admitted to membership employees of Company A, who were employed in an industry affecting commerce, to wit: the construction industry, together with others, did knowingly and willfully request, demand, receive, accept and agree to receive and accept things of value in an amount in excess of $1000, to wit: the benefits of the House Kickback Scheme, from a person acting in the interest of an employer, to wit: Company A, which was a party to a collective bargaining agreement with Local 8A-28A.

(Title 29, United States Code, Sections 186(a)(2) and 186(d)(2); Title 18, United States Code, Sections 3551 et seq.)

COUNT NINE
(Theft or Embezzlement in Connection
with a Health Care Benefit Program)

37.   The allegations contained in paragraphs 1 through 19 are hereby realleged and incorporated as if fully set forth in this paragraph.

38.   In or about and between March 2003 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HECTOR LOPEZ, together with others, did knowingly, willfully and intentionally embezzle, steal, and otherwise without authority convert to the use of a person other than the rightful owner, and misapply the moneys, funds, securities, credits, property and

other assets, in an amount exceeding $100, of a healthcare benefit program, to wit, the assets of the Welfare Fund used to fund the John Doe #3 Kickback Scheme and to pay the proceeds of the Union Hall Renovation Fraud and the Bid-Rigging Scheme.

(Title 18, United States Code, Sections 669, 2 and 3551 et seq.)

## COUNT TEN
### (Health Care Fraud)

39. The allegations contained in paragraphs 1 through 19 are hereby realleged and incorporated as if fully set forth in this paragraph.

40. In or about and between March 2003 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HECTOR LOPEZ, together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, to wit: the Welfare Fund via the John Doe #3 Kickback Scheme, the Union Hall Renovation Fraud and the Bid-Rigging Scheme, and to obtain by means of false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of the Welfare Fund, which depleted the money and property available to the Welfare Fund to deliver and pay for health care benefits, items and services.

(Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

## COUNT ELEVEN
(Structuring)

41.   The allegations contained in paragraphs 1 through 19 are hereby realleged and incorporated as if fully set forth in this paragraph.

42.   In or about and between July 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant HECTOR LOPEZ, together with others, for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and the regulations prescribed thereunder, did knowingly and intentionally structure and assist in structuring, and attempt to structure and assist in structuring transactions with one or more domestic financial institutions, by: (a) breaking amounts of currency in excess of $10,000 into amounts of less than $10,000; and (b) depositing the smaller amounts of currency into accounts with one or more domestic financial institutions.

(Title 31, United States Code, Sections 5324(a)(3) and 5324(d)(1); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNTS TWELVE THROUGH FIFTEEN
(False Tax Filings)

43.   The allegations contained in paragraphs 1 through 19 of this Indictment are realleged and incorporated as if fully set forth in this paragraph.

44.   On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant HECTOR LOPEZ did knowingly and willfully attempt to evade and defeat substantial income tax due and owing by him to the United States of America for each of the below calendar years, by affirmatively concealing his Unreported Income, and by filing and causing to be filed with the Internal Revenue Service, false and fraudulent U.S. Individual Tax Returns, Forms 1040, for each of the calendar years below, which only reported the below amounts as his income and failed to report his Unreported Income, resulting in substantial additional taxes due and owing to the United States of America:

| COUNT | APPROXIMATE DATE FILED | CALENDAR YEAR | REPORTED TOTAL INCOME |
|-------|------------------------|---------------|-----------------------|
| 12 | April 15, 2007 | 2006 | $123,938 |
| 13 | October 15, 2008 | 2007 | $127,155 |
| 14 | August 24, 2009 | 2008 | $144,946 |
| 15 | April 15, 2010 | 2009 | $138,241 |

(Title 26, United States Code, Section 7201; Title 18, United States Code, Sections 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE, TWO, FOUR, FIVE, SEVEN AND EIGHT

45.   The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts One, Two, Four, Five, Seven and Eight, the government will seek forfeiture, in accordance with Title 18,

United States Code, Section 981(a)(1)(C) and Title 28, United

States Code, Section 2461(c), of any property constituting or

derived from proceeds obtained directly or indirectly as a result

of such offenses.

46. If any of the above-described forfeitable

property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due

diligence;

b. has been transferred or sold to, or deposited

with, a third party;

c. has been placed beyond the jurisdiction of

the court;

d. has been substantially diminished in value;

or

e. has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c), to seek forfeiture of any

other property of the defendant up to the value of the

forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title

18, United States Code, Section 981(a)(1)(C); Title 21, United

States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS THREE AND SIX

47. The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts Three or Six, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), of all property involved in such offenses in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offenses, and all property traceable to such property.

48. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT NINE AND TEN

49. The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts Nine or Ten, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), of any property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses.

50. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b))

<u>CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ELEVEN</u>

51.    The United States hereby gives notice to the defendant that, upon his conviction of Count Eleven, the government will seek forfeiture in accordance with Title 31, United States Code, Section 5317(c), of any property, real or personal, involved in such offense, and any property traceable to such property.

52.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 31, United States Code, Section 5317(c); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2005R01013
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*Hector Lopez,*

Defendant.

## INDICTMENT

(T. 18, U.S.C., §§ 371, 669, 981(a)(1)(C), 982(a)(1), 982(a)(7), 982(b), 982(b)(1), 1341, 1343, 1347, 1349, 1956(a)(1)(B)(i), 1956(h), 1957(b), 1957(d)(1), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 26, U.S.C., § 7201; T. 28, U.S.C., § 2461(c); T. 29, U.S.C., §§ 186(a)(2) and 186(d)(2); T. 31, U.S.C., §§ 5317(c), 5324(a)(3) and 5324(d)(1))

_A true bill._

_____
Foreman

Filed in open court this _____ day,

of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____

_____

*Marisa Megur Seifan, Assistant U.S. Attorney (718-254-6008)*